

# SECURITY AGREEMENT

Borrower: Domistyle, Inc.  Lender/Secured Party: Frost Bank
Address: 4835 LBJ Freeway, Suite 800  Address: P.O. Box 1600
Dallas, Texas  San Antonio, TX 78296

**THIS SECURITY AGREEMENT** ("Agreement") is dated April _____, 2013, by and between Borrower ("Borrower") and Lender ("Secured Party").

1. *Definitions*. As used in this Agreement, the following terms shall have the meanings indicated below:

(a) The term "Code" shall mean the Uniform Commercial Code as in effect in the State of Texas or of any other state having jurisdiction with respect to any of the rights and remedies of Secured Party on the date of this Agreement or as it may hereafter be amended from time to time.

(b) The term "Bankruptcy Code" shall mean the United States Bankruptcy Code, Title 11 of the United States Code.

(c) "DIP Orders" shall mean the Interim Order and the Final Order entered by the Bankruptcy Court or any other court of competent jurisdiction.

(d) "Final Order" shall mean the order entered after a final hearing under Bankruptcy Rule 4001(c)(2), pursuant to Section 364(c) and (d) of the Bankruptcy Code, as to which no stay pending appeal has been entered, and no motion to reconsider filed, and which has not been vacated, modified or reversed, (i) authorizing the Borrower to incur post-petition secured indebtedness and to grant liens in accordance with the Loan Agreement and the other Loan Documents, (ii) providing for the super-priority of the Indebtedness, including without limitation, a specific grant of a security interest to Lender in all Collateral, as well as the right to the proceeds from all Collateral in accordance with the Loan Agreement and the other Loan Documents, (iii) providing "adequate protection" pursuant to Section 364(d) of the Bankruptcy Code to such creditors whose liens have been primed, and (iv) authorizing the payment by the Borrower of all fees and expenses contemplated by the Loan Agreement and the other Loan Documents, and in all respects to be satisfactory to Lender.

(e) "Interim Order" shall mean the order entered pursuant to Section 364(c) and (d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), as to which no stay pending appeal, has been entered, and which Interim Order has not been vacated,

modified or reversed, (i) authorizing the Borrower to incur post-petition secured indebtedness and to grant liens in accordance with the Loan Agreement and the other Loan Documents, (ii) providing for the super-priority of the Indebtedness, including without limitation, a specific grant of a security interest to Lender in all Collateral, as well as the right to the proceeds from all Collateral in accordance with the Loan Agreement and the other Loan Documents, (iii) providing "adequate protection" pursuant to Section 364(d) of the Bankruptcy Code to such creditors whose liens have been primed, and (iv) authorizing the payment by the Borrower of all fees and expenses contemplated by the Loan Agreement and the other Loan Documents, each on an interim basis and as set forth in such order, and in all respects to be satisfactory to Lender.

(f) The term "Collateral" shall mean all of the personal property of Grantor as set forth below (as indicated), wherever located, and now owned or hereafter acquired:

(i) All "accounts", as defined in the Code (including health-care-insurance receivables), together with any and all books of account, customer lists and other records relating in any way to the foregoing (including, without limitation, computer software, whether on tape, disk, card, strip, cartridge or any other form), and in any case where an account arises from the sale of goods, the interest of Grantor in such goods.

(ii) All "inventory" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

(iii) All "chattel paper" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

(iv) All "equipment" as defined in the Code, of whatsoever kind and character now or hereafter possessed, held, acquired, leased or owned by Grantor and used or usable in Grantor's business, and in any event shall include, but shall not be limited to, all machinery, tools, computer software, office equipment, furniture, appliances, furnishings, fixtures, vehicles, motor vehicles, together with all replacements, accessories, additions, substitutions and accessions to all of the foregoing, and all manuals, instructions and records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form). To the extent that the foregoing property is located on, attached to, annexed to, related to, or used in connection with, or otherwise made a part of, and is or shall become fixtures upon, real property, such real property and the record owner thereof (if other than Grantor) is described on Exhibit A attached hereto and made a part hereof.

2

  (iv) All "instruments" as defined in the Code (including promissory notes), and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

  (v) All "investment property" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

  (vi) All "documents" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

  (vii) All "deposit accounts" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

  (viii) Grantor's claims:

    (a) against Langley/Empire Candle, LLC and/or Rick Langley for business torts committed in the six months prior to the Effective Date, and all such claims and causes of action arising after the Effective Date, including but not limited to breach of contract, fraud, tortious interference, and/or conversion;

    (b) against Brenda Buell, Kevin Maxwell, Scott Barnes and any and all other officers or directors of Borrower for breach of fiduciary duty to Borrower.

    (c) claims and cause of action against McBee & Co, PC arising from the 2010 Audit of Borrower.

  (ix) All "letter of credit rights" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

  (x) All "general intangibles" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form), including all permits, regulatory approvals, copyrights, patents, trademarks, service marks, trade names, mask works, goodwill, licenses and all other intellectual property owned by Grantor or used in Grantor's business.

3

(xi) All "supporting obligations" as defined in the Code, and all records relating in any way to the foregoing (including, without limitation, any computer software, whether on tape, disk, card, strip, cartridge or any other form).

(xii) To the extent not included above: (a) all receivables; (b) all contract rights; (c) all goods and other property, whether or not delivered, (i) the sale or lease of which gives or purports to give rise to any receivable, including, but not limited to, all merchandise returned or rejected by or repossessed from customers, or (ii) securing any receivable, including, without limitation, all rights as an unpaid vendor or lienor (including, without limitation, stoppage in transit, replevin and reclamation) with respect to such goods and other property; (d) all mortgages, deeds to secure debt and deeds of trust on real or personal property, guaranties, leases, security agreements, and other agreements and property which secure or relate to any receivable or other Collateral, or are acquired for the purpose of securing and enforcing any item thereof; (e) all other goods and personal property, whether tangible or intangible, wherever located, including money, supporting obligations, letters of credit, and each Letter-of-credit right; and (f) any and all claims and/or causes of action existing under the Bankruptcy Code, including, but not limited to, claims and/or causes of action arising under Sections 542, 544, 547, 548, 549 and/or 550 of the Bankruptcy Code (collectively the "Avoidance Actions").

The term Collateral, as used herein, shall also include all PRODUCTS and PROCEEDS of all of the foregoing (including without limitation, insurance payable by reason of loss or damage to the foregoing property) and any property, securities, guaranties or monies of Grantor which may at any time come into the possession of Secured Party. The designation of proceeds does not authorize Grantor to sell, transfer or otherwise convey any of the foregoing property except finished goods intended for sale in the ordinary course of Grantor's business or as otherwise provided herein.

(c) The term "Grantor" shall mean Borrower, a Texas Corporation.

(d) The term "Indebtedness" shall mean (i) all indebtedness, obligations and liabilities of Borrower to Secured Party of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisition by Secured Party, be or have been payable to or in favor of a third party and subsequently acquired by Secured Party (it being contemplated that Secured Party may make such acquisitions from third parties), including without limitation all indebtedness, obligations and liabilities of Borrower to Secured Party now existing or hereafter arising by note, draft, acceptance, guaranty, endorsement, letter of credit, assignment, purchase, overdraft, discount, indemnity agreement, or otherwise, including, without limitation that one certain

4

promissory note of even date herewith, in the original principal amount of $21,709,061 executed by Borrower and payable to the order of Secured Party, (ii) all accrued but unpaid interest on any of the indebtedness described in (i) above, (iii) all obligations of Borrower to Secured Party under any documents evidencing, securing, governing and/or pertaining to all or any part of the indebtedness described in (i) and (ii) above, (iv) all costs and expenses incurred by Secured Party in connection with the collection and administration of all or any part of the indebtedness and obligations described in (i), (ii) and (iii) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including without limitation all reasonable attorneys' fees, and (v) all renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in (i), (ii), (iii) and (iv) above.

(e) The term "Loan Documents" shall mean all instruments and documents evidencing, securing, governing, guaranteeing and/or pertaining to the Indebtedness.

All words and phrases used herein which are expressly defined in Section 1.201 or Chapter 9 of the Code shall have the meaning provided for therein. Other words and phrases defined elsewhere in the Code shall have the meaning specified therein except to the extent such meaning is inconsistent with a definition in Section 1.201 or Chapter 9 of the Code.

2. *Security Interest*. As security for the Indebtedness, Grantor, for value received, hereby pledges and grants to Secured Party a continuing security interest in the Collateral.

(a) Secured Party shall not be required to file any UCC-1 financing statements, mortgages or any other document, or take any other action, including possession of any of the Collateral, in order to validate or perfect the liens and security interests granted to Lender hereunder or under any of the other Loan Documents, as all such liens and security interests shall be deemed automatically perfected as of the date of the Interim Order. If Lender shall, in its discretion, choose to file such UCC-1 financing statements (or amendments to or continuations of any existing financing statements), mortgages and otherwise confirm perfection of such liens, all such financing statements, mortgages or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order. Lender may, in its discretion, file a certified copy of the Interim Order or the Final Order in any filing or recording office in any jurisdiction in which the Borrower (a) has or maintains any Collateral; (b) has or maintains any an office; or (c) is organized.

(b) Liens Under DIP Orders. The liens and security interests granted to Lender pursuant to the provisions of this Agreement and pursuant to any of the other Loan Documents shall be in addition to all liens conferred upon Lender by the Bankruptcy Court pursuant to the terms of the DIP Orders. Anything contained in this Agreement or any other Loan Document to the contrary notwithstanding, except for the sale of Inventory to buyers in the ordinary course

5

of business and except as specifically permitted herein, the Borrower has no authority, express or implied, to dispose of any item or portion of the Collateral.

(c) <u>Priority of Liens; Further Assistance</u>.

(i) The liens granted pursuant to the terms of this Agreement and the other Loan Documents, and the liens conferred upon Lender pursuant of the DIP Orders, shall constitute (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, a "super-priority" administrative expense claim, (ii) pursuant to Section 364(c)(2) of the Bankruptcy Code, a first priority Lien upon or security interest in all of the Collateral that is not otherwise encumbered by a validly perfected security interest or Lien in existence on the Petition Date that has not been primed; (iii) pursuant to Section 364(d)(1) of the Bankruptcy Code, a first priority, priming Lien upon or security interest in all of the Collateral in existence on the Petition Date and the proceeds thereof; and (iv) pursuant to Section 364(c)(3) of the Bankruptcy Code, a second priority Lien upon or security interest in all of the Collateral that was in existence on the Petition Date and subject to a validly perfected and unavoidable security interest or lien that has not been primed and which has not been subordinated to the liens in favor of Lender in its capacity as a pre-petition lender.

(ii) Except as expressly provided in the DIP Orders, no expenses, costs or charges in connection with the Borrower's bankruptcy case shall be charged against the Collateral or Lender under Section 506(c) of the Bankruptcy Code and Borrower hereby waives any rights it has to seek such charges under Section 506(c) of the Bankruptcy Code.

(d) <u>Credit Bid</u>.  Grantor hereby acknowledges and agrees that Lender has the absolute right to credit bid any and/or all the Indebtedness at any sale of all or any portion of the Collateral and/or any other asset of the Grantor.  Grantor agrees not to object or otherwise dispute any credit bid of Lender and further agrees to support and assert Lender's right to credit bid.

3. *Representations and Warranties*.  In addition to any representations and warranties of Grantor set forth in the Loan Documents, which are incorporated herein by this reference, Grantor hereby represents and warrants the following to Secured Party:

(a) <u>Security Interest</u>.  Grantor has and will have at all times full right, power and authority to grant a security interest in the Collateral to Secured Party in the manner provided herein, free and clear of any lien, security interest or other charge or encumbrance.  This Agreement creates a legal, valid and binding security interest in favor of Secured Party in the Collateral securing the Indebtedness.

6

(b)     Location/Identity.  Grantor's principal residence or place of business and chief executive office (as those terms are used in the Code), as the case may be is located at the address set forth herein.  Except as specified elsewhere herein, all Collateral and records concerning the Collateral shall be kept at such address and such other addresses as may be listed in Schedule 1 attached hereto and made a part hereof.

(c)     Exclusion of Certain Collateral.  Unless otherwise agreed by Secured Party, the Collateral does not include any aircraft, watercraft or vessels, railroad cars, railroad equipment, locomotives or other rolling stock intended for a use related to interstate commerce.

(d)     Inventory.  The security interest in the inventory shall continue through all stages of manufacture and shall, without further action, attach to the accounts or other proceeds resulting from the sale or other disposition thereof and to all such inventory as may be returned to Grantor by its account Grantors.

4.     *Affirmative Covenants*.  In addition to all covenants and agreements of Grantor set forth in the Loan Documents, which are incorporated herein by this reference, Grantor will comply with the covenants contained in this Section 4 at all times during the period of time this Agreement is effective unless Secured Party shall otherwise consent in writing.

(a)     Ownership and Liens.  Grantor will maintain good and marketable title to all Collateral free and clear of all liens, security interests, encumbrances or adverse claims, except for the security interest created by this Agreement and the security interests and other encumbrances expressly permitted herein or by the other Loan Documents.  Grantor will not permit any dispute, right of setoff, counterclaim or defense to exist with respect to all or any part of the Collateral.  Grantor will cause any financing statement or other security instrument with respect to the Collateral to be terminated, except as may exist or as may have been filed in favor of Secured Party.  Grantor hereby irrevocably appoints Secured Party as Grantor's attorney-in-fact, such power of attorney being coupled with an interest, with full authority in the place and stead of Grantor and in the name of Grantor or otherwise, for the purpose of terminating any financing statements currently filed with respect to the Collateral.  Grantor will defend at its expense Secured Party's right, title and security interest in and to the Collateral against the claims of any third party.

(b)     Further Assurances.  Grantor will from time to time at its expense promptly execute and deliver all further instruments and documents and take all further action necessary or appropriate or that Secured Party may request in order (i) to perfect and protect the security interest created or purported to be created hereby and the first priority of such security interest, (ii) to enable Secured Party to exercise and enforce its rights and remedies hereunder in respect of the Collateral, and (iii) to otherwise effect the purposes of

7

this Agreement, including without limitation: (A) executing (if requested) and filing such financing or continuation statements, or amendments thereto; and (B) furnishing to Secured Party from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral, all in reasonable detail satisfactory to Secured Party.

(c)     <u>Inspection of Collateral</u>.  Grantor will keep adequate records concerning the Collateral and will permit Secured Party and all representatives and agents appointed by Secured Party to inspect any of the Collateral and the books and records of or relating to the Collateral at any time during normal business hours, to make and take away photocopies, photographs and printouts thereof and to write down and record any such information.

(d)     <u>Control Agreements</u>.  If so requested, Grantor will cooperate with Secured Party in obtaining a control agreement in form and substance satisfactory to Secured Party with respect to Collateral consisting of:

(i) Deposit Accounts;

(ii) Investment Property;

(iii) Letter-of-credit rights; and

(iv) Electronic chattel paper.

5.     <u>Negative Covenants</u>.  Grantor will comply with the covenants contained in this <u>Section 5</u> at all times during the period of time this Agreement is effective, unless Secured Party shall otherwise consent in writing.

(a)     <u>Transfer or Encumbrance</u>.  Grantor will not (i) sell, assign (by operation of law or otherwise), transfer, exchange, lease or otherwise dispose of any of the Collateral, (ii) grant a lien or security interest in or execute, authorize, file or record any financing statement or other security instrument with respect to the Collateral to any party other than Secured Party, or (iii) deliver actual or constructive possession of any of the Collateral to any party other than Secured Party, except for (A) sales and leases of inventory in the ordinary course of business, and (B) the sale or other disposal of any item of equipment which is worn out or obsolete and which has been replaced by an item of equal suitability and value, owned by Grantor and made subject to the security interest under this Agreement, but which is otherwise free and clear of any lien, security interest, encumbrance or adverse claim; provided, however, the exceptions permitted in clauses (A) and (B) above shall automatically terminate upon the occurrence of an Event of Default.

8

(b)     <u>Impairment of Security Interest</u>.  Grantor will not take or fail to take any action which would in any manner impair the value or enforceability of Secured Party's security interest in any Collateral.

(c)     <u>Possession of Collateral</u>.  Grantor will not cause or permit the removal of any Collateral from its possession, control and risk of loss, nor will Grantor cause or permit the removal of any Collateral (or records concerning the Collateral) from the address on the first page hereof and the addresses specified on <u>Schedule 1</u> to this Agreement other than (i) as permitted by <u>Subsection 5(a)</u>, or (ii) in connection with the possession of any Collateral by Secured Party or by its bailee.  If any Collateral is in the possession of a third party, Grantor will join with Secured Party in notifying the third party of Secured Party's security interest therein <u>and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party.</u>

(d)     <u>Goods</u>.  Grantor will not permit any Collateral which constitutes goods to at any time (i) be covered by any document except documents in the possession of the Secured Party, (ii) become so related to, attached to or used in connection with any particular real property so as to become a fixture upon such real property, or (iii) be installed in or affixed to other goods so as to become an accession to such other goods unless such other goods are subject to a perfected first priority security interest under this Agreement.

(e)     <u>Marking of Chattel Paper</u>.  Grantor will not create any Chattel Paper without placing a legend on the Chattel Paper acceptable to Secured Party indicating that Secured Party has a security interest in the Chattel Paper.

6.     *<u>Rights of Secured Party</u>*.  Secured Party shall have the rights contained in this <u>Section 6</u> at all times during the period of time this Agreement is effective.

(a)     <u>Additional Financing Statements Filings</u>.  Grantor hereby authorizes Secured Party to file, without the signature of Grantor, one or more financing or continuation statements, and amendments thereto, relating to the Collateral.  Grantor further agrees that a carbon, photographic or other reproduction of this Security Agreement or any financing statement describing any Collateral is sufficient as a financing statement and may be filed in any jurisdiction Secured Party may deem appropriate.

(b)     <u>Power of Attorney</u>.  Grantor hereby irrevocably appoints Secured Party as Grantor's attorney-in-fact, such power of attorney being coupled with an interest, with full authority in the place and stead of Grantor and in the name of Grantor or otherwise, after the occurrence of an Event of Default, to take any action and to execute any instrument which Secured Party may deem necessary or appropriate to accomplish the purposes of this Agreement, including without limitation:  (i) to obtain and adjust insurance required by

9

Secured Party hereunder; (ii) to demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of the Collateral; (iii) to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (i) or (ii) above; and (iv) to file any claims or take any action or institute any proceedings which Secured Party may deem necessary or appropriate for the collection and/or preservation of the Collateral or otherwise to enforce the rights of Secured Party with respect to the Collateral.

(c) *Performance by Secured Party*. If Grantor fails to perform any agreement or obligation provided herein, Secured Party may itself perform, or cause performance of, such agreement or obligation, and the expenses of Secured Party incurred in connection therewith shall be a part of the Indebtedness, secured by the Collateral and payable by Grantor on demand.

7. *Events of Default*. Each of the following constitutes an "Event of Default" under this Agreement:

(a) *Default in Payment*. The failure, refusal or neglect of Borrower to make any payment of principal or interest on the Indebtedness, or any portion thereof, as the same shall become due and payable; or

(b) *Non-Performance of Covenants*. The failure of Borrower or any Obligated Party to timely and properly observe, keep or perform any covenant, agreement, warranty or condition required herein or in any of the other Loan Documents; or

(c) *Default Under other Loan Documents*. The occurrence of an event of default under any of the other Loan Documents; or

(d) *False Representation*. Any representation or warranty contained herein or in any of the other Loan Documents made by Borrower or any Obligated Party is false or misleading in any material respect.

8. *Remedies and Related Rights*. If an Event of Default shall have occurred, and without limiting any other rights and remedies provided herein, under any of the other Loan Documents or otherwise available to Secured Party, Secured Party may exercise one or more of the rights and remedies provided in this Section.

(a) *Remedies*. Secured Party may from time to time at its discretion, without limitation and without notice except as expressly provided in any of the Loan Documents:

(i) exercise in respect of the Collateral all the rights and remedies of a secured party under the Code (whether or not the Code applies to the affected Collateral);

    (ii) require Grantor to, and Grantor hereby agrees that it will at its expense and upon request of Secured Party, assemble the Collateral as directed by Secured Party and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties;

    (iii) reduce its claim to judgment or foreclose or otherwise enforce, in whole or in part, the security interest granted hereunder by any available judicial procedure;

    (iv) sell or otherwise dispose of, at its office, on the premises of Grantor or elsewhere, the Collateral, as a unit or in parcels, by public or private proceedings, and by way of one or more contracts (it being agreed that the sale or other disposition of any part of the Collateral shall not exhaust Secured Party's power of sale, but sales or other dispositions may be made from time to time until all of the Collateral has been sold or disposed of or until the Indebtedness has been paid and performed in full), and at any such sale or other disposition it shall not be necessary to exhibit any of the Collateral;

    (v) buy the Collateral, or any portion thereof, at any public sale;

    (vi) buy the Collateral, or any portion thereof, at any private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations;

    (vii) apply for the appointment of a receiver for the Collateral, and Grantor hereby consents to any such appointment; and

    (viii) at its option, retain the Collateral in satisfaction of the Indebtedness whenever the circumstances are such that Secured Party is entitled to do so under the Code or otherwise, to the full extent permitted by the Code, Secured Party shall be permitted to elect whether such retention shall be in full or partial satisfaction of the Indebtedness.

  In the event Secured Party shall elect to sell the Collateral, Secured Party may sell the Collateral without giving any warranties as and shall be permitted to specifically disclaim any warranties of title or the like.  Further, if Secured Party sells any of the Collateral on credit, Grantor will be credited only with payments actually made by the purchaser, received by Secured Party and applied to the Indebtedness.  In the event the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Grantor shall be credited with the proceeds of the sale.  Grantor agrees that in the event Grantor or any Borrower is entitled to receive any notice under the Code, as it exists in the state governing any such notice, of the sale or other disposition of any Collateral, reasonable notice shall be deemed given when such notice is

deposited in a depository receptacle under the care and custody of the United States Postal Service, postage prepaid, at such party's address set forth on the first page hereof, ten (10) days prior to the date of any public sale, or after which a private sale, of any of such Collateral is to be held. Secured Party shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

      (b)    <u>Application of Proceeds</u>.  If any Event of Default shall have occurred, Secured Party may at its discretion apply or use any cash held by Secured Party as Collateral, and any cash proceeds received by Secured Party in respect of any sale or other disposition of, collection from, or other realization upon, all or any part of the Collateral as follows in such order and manner as Secured Party may elect:

      (i)    to the repayment or reimbursement of the reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Secured Party in connection with (A) the administration of the Loan Documents, (B) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, the Collateral, and (C) the exercise or enforcement of any of the rights and remedies of Secured Party hereunder;

      (ii)    to the payment or other satisfaction of any liens and other encumbrances upon the Collateral;

      (iii)    to the satisfaction of the Indebtedness;

      (iv)    by holding such cash and proceeds as Collateral;

      (v)    to the payment of any other amounts required by applicable law (including without limitation, Section 9.615(a)(3) of the Code or any other applicable statutory provision); and

      (vi)    by delivery to Grantor or any other party lawfully entitled to receive such cash or proceeds whether by direction of a court of competent jurisdiction or otherwise.

      (c)    <u>Deficiency</u>.  In the event that the proceeds of any sale of, collection from, or other realization upon, all or any part of the Collateral by Secured Party are insufficient to pay all amounts to which Secured Party is legally entitled, Borrower and any party who guaranteed or is otherwise obligated to pay all or any portion of the Indebtedness shall be liable for the deficiency, together with interest thereon as provided in the Loan Documents, to the full extent permitted by the Code.

(d) *Other Recourse*. Grantor waives any right to require Secured Party to proceed against any third party, exhaust any Collateral or other security for the Indebtedness, or to have any third party joined with Grantor in any suit arising out of the Indebtedness or any of the Loan Documents, or pursue any other remedy available to Secured Party.

9. *Miscellaneous*.

(a) *Amendment*. No modification, consent or amendment of any provision of this Agreement or any of the other Loan Documents shall be valid or effective unless the same is authenticated by the party against whom it is sought to be enforced, except to the extent of amendments specifically permitted by the Code without authentication by the Grantor or Borrower.

(b) *Actions by Secured Party*. The lien, security interest and other security rights of Secured Party hereunder shall not be impaired by (i) any renewal, extension, increase or modification with respect to the Indebtedness, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Secured Party may grant with respect to the Collateral, or (iii) any release or indulgence granted to any endorser, guarantor or surety of the Indebtedness. The taking of additional security by Secured Party shall not release or impair the lien, security interest or other security rights of Secured Party hereunder or affect the obligations of Grantor hereunder.

(c) *Waiver by Secured Party*. Secured Party may waive any Event of Default without waiving any other prior or subsequent Event of Default. Secured Party may remedy any default without waiving the Event of Default remedied. Neither the failure by Secured Party to exercise, nor the delay by Secured Party in exercising, any right or remedy upon any Event of Default shall be construed as a waiver of such Event of Default or as a waiver of the right to exercise any such right or remedy at a later date. No single or partial exercise by Secured Party of any right or remedy hereunder shall exhaust the same or shall preclude any other or further exercise thereof, and every such right or remedy hereunder may be exercised at any time. No waiver of any provision hereof or consent to any departure by Grantor therefrom shall be effective unless the same shall be in writing and signed by Secured Party and then such waiver or consent shall be effective only in the specific instances, for the purpose for which given and to the extent therein specified. No notice to or demand on Grantor in any case shall of itself entitle Grantor to any other or further notice or demand in similar or other circumstances.

(d) *Controlling Law; Venue*. This Agreement is executed and delivered as an incident to a lending transaction negotiated and consummated in Bexar County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas. Grantor (and Borrower, if Borrower is not the Grantor), for itself and its successors and assigns, hereby irrevocably (a) submits to the nonexclusive jurisdiction of the state and

13

federal courts in Texas, (b) waives, to the fullest extent permitted by law, and objection that it may now or in the future have to the laying of venue of any litigation arising out of or in connection with any Loan Document brought in the District Court of Bexar County, Texas, or in the United States Bankruptcy Court for the Eastern District of Texas, (c) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum, (d) agrees that any legal proceeding against any party to any Loan Document arising out of or in connection with any of the Loan Documents may be brought in one of the foregoing courts, and (e) agrees that service of process upon it may be made by certified or registered mail, return receipt requested, at its address specified herein. Nothing herein shall affect the right of Lender to serve process in any other manner permitted by law or shall limit the right of Lender to bring any action or proceeding against Grantor (and Borrower, if Borrower is not the Grantor) or with respect to any of Grantor's (or Borrower's, if Borrower is not the Grantor) property in courts in other jurisdictions. The scope of each of the foregoing waivers is intended to be all encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including, without limitation, contract claims, tort claims, breach of duty claims, and all other common law and statutory claims. Grantor (and Borrower, if Borrower is not the Grantor) acknowledges that these waivers are a material inducement to Lender's agreement to enter into agreements and obligations evidenced by the Loan Documents, that Lender has already relied on these waivers and will continue to rely on each of these waivers in related future dealings. The waivers in this section are irrevocable, meaning that they may not be modified either orally or in writing, and these waivers apply to any future renewals, extensions, amendments, modifications, or replacements in respect of the applicable Loan Document. In connection with any litigation, this Agreement may be filed as a written consent to a trial by the court.

(e) <u>Severability</u>. If any provision of this Agreement is held by a court of competent jurisdiction to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable, shall not impair or invalidate the remainder of this Agreement and the effect thereof shall be confined to the provision held to be illegal, invalid or unenforceable.

(f) <u>No Obligation</u>. Nothing contained herein shall be construed as an obligation on the part of Secured Party to extend or continue to extend credit to Borrower.

(g) <u>Notices</u>. All notices, requests, demands or other communications required or permitted to be given pursuant to this Agreement shall be in writing and given by (i) personal delivery, (ii) expedited delivery service with proof of delivery, or (iii) United States mail, postage prepaid, registered or certified mail, return receipt requested, sent to the intended addressee at the address set forth on the first page hereof or to such different address as the addressee shall have designated by written notice sent pursuant to the terms hereof and shall be deemed to have been received either, in the case of personal delivery, at

14

the time of personal delivery, in the case of expedited delivery service, as of the date of first attempted delivery at the address and in the manner provided herein, or in the case of mail, upon deposit in a depository receptacle under the care and custody of the United States Postal Service.  Either party shall have the right to change its address for notice hereunder to any other location within the continental United States by notice to the other party of such new address at least thirty (30) days prior to the effective date of such new address.

(h)     Binding Effect and Assignment.  This Agreement (i) creates a continuing security interest in the Collateral, (ii) shall be binding on Grantor and the heirs, executors, administrators, personal representatives, successors and assigns of Grantor, and (iii) shall inure to the benefit of Secured Party and its successors and assigns.  Without limiting the generality of the foregoing, Secured Party may pledge, assign or otherwise transfer the Indebtedness and its rights under this Agreement and any of the other Loan Documents to any other party.  Grantor's rights and obligations hereunder may not be assigned or otherwise transferred without the prior written consent of Secured Party.

(i)     Termination.   It is contemplated by the parties hereto that from time to time there may be no outstanding Indebtedness, but notwithstanding such occurrences, this Agreement shall remain valid and shall be in full force and effect as to subsequent outstanding Indebtedness.  Upon (i) the satisfaction in full of the Indebtedness, (ii) the termination or expiration of any commitment of Secured Party to extend credit to Borrower, (iii) written request for the termination hereof delivered by Grantor to Secured Party, and (iv) written release delivered by Secured Party to Grantor, this Agreement and the security interests created hereby shall terminate. Upon termination of this Agreement and Grantor's written request, Secured Party will, at Grantor's sole cost and expense, return to Grantor such of the Collateral as shall not have been sold or otherwise disposed of or applied pursuant to the terms hereof and execute and deliver to Grantor such documents as Grantor shall reasonably request to evidence such termination.

(j)     Cumulative Rights.  All rights and remedies of Secured Party hereunder are cumulative of each other and of every other right or remedy which Secured Party may otherwise have at law or in equity or under any of the other Loan Documents, and the exercise of one or more of such rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of any other rights or remedies.  Further, except as specifically noted as a waiver herein, no provision of this Agreement is intended by the parties to this Agreement to waive any rights, benefits or protection afforded to Secured Party under the Code.

(k)     Gender and Number.  Within this Agreement, words of any gender shall be held and construed to include the other gender, and words in the singular number shall be held and construed to include the plural and words in the plural number shall be held and construed to include the singular, unless in each instance the context requires otherwise.

15

(l) <u>Descriptive Headings</u>. The headings in this Agreement are for convenience only and shall in no way enlarge, limit or define the scope or meaning of the various and several provisions hereof.

10. *<u>Consent to Disclose Information</u>*. Borrower (and Grantor, if Grantor is not the Borrower) authorizes and consents to the disclosure by Secured Party of all information relating to the Note to any other party to the account pledged as Collateral and upon which a security interest is granted herein, including, but not limited to, information regarding the name of the Borrower and the amount, date and maturity of the Note.

11. *<u>Counterparts; Facsimile Documents and Signatures</u>*. This Loan Agreement may be separately executed in any number of counterparts, each of which will be an original, but all of which, taken together, will be deemed to constitute one and the same instrument. For purposes of negotiating and finalizing this Loan Agreement, if this document or any document executed in connection with it is transmitted by facsimile machine, electronic mail or other electronic transmission, it will be treated for all purposes as an original document. Additionally, the signature of any party on this document transmitted by way of a facsimile machine or electronic mail will be considered for all purposes as an original signature. Any such transmitted document will be considered to have the same binding legal effect as an original document. At the request of any party, any faxed or electronically transmitted document will be re-executed by each signatory party in an original form.

12. *<u>Imaging of Documents</u>*. Grantor (and Borrower, if Borrower is not the Grantor) understands and agrees that (a) Lender's document retention policy may involve the electronic imaging of executed Loan Documents and the destruction of the paper originals, and (b) Grantor (and Borrower, if Borrower is not the Grantor) waives any right that it may have to claim that the imaged copies of the Loan Documents are not originals.

13. *<u>DIP Orders Control</u>*. This Agreement and the other Loan Documents are each subject to the terms and provisions contained in the DIP Orders to the same extent and effect as if the DIP Orders were fully set forth herein and therein; and in the event that any term or provision of this Agreement or any other Loan Document conflicts or is inconsistent with any term or provision of any DIP Order, the term and provision of the applicable DIP Order shall control and be given effect.

14. *<u>Amendment and Restatement</u>*. This Agreement is given in amendment and restatement and not in extinguishment or novation of the obligations of Borrower under the (a) the Subordinate Deed of Trust, Security Agreement, Assignment of Leases, Assignment of Rents, and Financing Statement dated August 17, 2011, which is ratified in the Loan Agreement covering certain real property situated in Laredo, Texas, as more particularly described therein; (b) Security Agreement of even date herewith, by and between Borrower and Lender, covering certain collateral as more particularly described

16

therein; (c) Security Agreement, dated August 17, 2011, which is ratified in the Loan Agreement, by and between Borrower and Lender, covering certain collateral as more particularly described therein; (d) Trademark Collateral Security Agreement, dated August 17, 2011, which is ratified in the Loan Agreement, by and between Borrower and Lender, covering certain collateral as more particularly described therein; (e) Security Interest Assignment (Patents & Trademarks), dated August 17, 2011, which is ratified in the Loan Agreement, by and between Borrower and Lender, covering certain collateral as more particularly described therein; and (f) Security Interest Assignment (Copyrights) dated August 17, 2011, which is ratified in the Loan Agreement, by and between Borrower and Lender, covering certain collateral as more particularly described therein. Each of the foregoing security instruments is hereby ratified and adopted as additional security interests securing the Collateral under this Agreement.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

EXECUTED as of the date first written above.

| **BORROWER**: | **SECURED PARTY**: |
|---|---|
|  | FROST BANK, a Texas state bank |
| By:_____ | By:_____ |
| Printed Name:_____ | Printed Name:_____ |
| Title:_____ | Title:_____ |

**SCHEDULE 1
TO
SECURITY AGREEMENT
DATED _____, 20\_\_\_
BY AND BETWEEN
FROST BANK
AND**

_____

The other addresses referenced in Subsection 3(g) are as follows:

**EXHIBIT A
TO
SECURITY AGREEMENT
DATED _____, 20\_\_\_
BY AND BETWEEN
FROST BANK
AND**

_____

Location:

Owner of Record:

Legal Description:

4820-8829-8771, v. 2