IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 13-40944 |
| DOMISTYLE, INC., | § | |
| | § | (Chapter 11) |
| Debtor. | § | |

### INTERIM AGREED ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING; AND (II) AUTHORIZING DEBTOR'S USAGE OF CASH COLLATERAL

CAME ON FOR EXPEDITED HEARING the *Emergency Motion for Interim and Final: (i) Authority to Obtain Secured Postpetition Financing; and (ii) Usage of Cash Collateral* (the "Motion"), filed by Milo H. Segner, Jr. (the "Receiver"), the duly appointed receiver for Domistyle, Inc. (the "Debtor"), the debtor and debtor-in-possession in the above styled and numbered bankruptcy case (the "Bankruptcy Case").

Having considered the Motion and the evidence at said hearing, and based on the agreement of the parties, the Court hereby finds and concludes as follows:

A.    On April 12, 2013 (the "Petition Date"), the Debtor filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code. The Debtor, under the management and authority of the Receiver, is in possession of its property, and operates its business, as a debtor-in-possession, pursuant to Bankruptcy Code sections 1107 and 1108.

B.    This Court has jurisdiction over the Bankruptcy Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.    On or about August 17, 2011, Frost Bank ("Frost"), as lender, and the Debtor, as borrower, each executed and entered into that certain Loan Agreement (the "Loan Agreement")

INTERIM AGREED ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING; AND (II) AUTHORIZING DEBTOR'S USAGE OF CASH COLLATERAL – Page 1

Exhibit E

regarding a $14,000,000.00 revolving line of credit, a $1,000,000 real estate term credit facility, and a $500,000 equipment term credit facility to be issued by Frost in favor of the Debtor (the "Loan"). Frost and the Debtor subsequently amended the Loan Agreement and the Loan to increase the revolving credit facility to $19,800,000 for the period of December 13, 2012 to March 31, 2013, whereafter the maximum amount of the revolving credit facility would be $16,300,000.

        D.      In connection with and pursuant to the terms of the Loan Agreement, on or about August 17, 2011, the Debtor executed and delivered to Frost a Revolving Credit Note in the original amount of $14,000,000.00 (the "Revolving Credit Note"), a Real Estate Term Note in the original amount of $1,000,000 (the "Real Estate Note"), and a Machinery and Equipment Term Note in the original amount of $500,000 (the "M&E Note") (collectively, the "Notes") and a Security Agreement ("Security Agreement"), a Subordinate Deed of Trust, Security Agreement, Assignment of Leases, Assignment of Rents, and Financing Statement (the "Deed of Trust"), a Trademark Collateral Security Agreement, a Security Interest Assignment (Patents & Trademarks, and a Security Interest Assignment (Copyrights) (collectively, the "Security Agreements") covering various assets of the Debtor (the "Prepetition Collateral").

        E.      As of the Petition Date, and prior thereto, the Debtor was in uncured default of the Loan Agreement and the Notes.

        F.      The Debtor stipulates and agrees that the Loan Agreement and the Notes are secured by various perfected, valid, and unavoidable liens and security interests in favor of Frost under the Security Agreements such that Frost has valid, perfected, and unavoidable liens and security interests in and to the Prepetition Collateral.

G. As such, Frost has an interest in "cash collateral" as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral").

H. Without an immediate ability to use Cash Collateral, the Debtor does not have other sufficient cash and funds to carry on the operation of its business, to pay employees, pay vendors and service providers, and to protect its property. Absent an immediate use of Cash Collateral, the Debtor and its estate will suffer immediate and irreparable injury. The relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

I. Frost is entitled to adequate protection under the Bankruptcy Code for the Debtor's usage of Cash Collateral, including the protections provided for in this Order.

J. Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize the disruption of the Debtor's existing business, will likely increase the value of property of the Debtor's estate, and is in the best interest of the Debtor, its creditors, and any other parties in interest.

K. In addition to the use of Cash Collateral, the Debtor has an immediate need for postpetition financing, without which the Debtor will not be able to conduct business, finish inventory, ship inventory, collect receivables, and safeguard its property, and without which the Debtor, its estate, and all creditors will suffer immediate and irreparable injury.

L. Frost is willing to extend an additional $500,000.00 (the "Postpetition Financing") to the Debtor on the terms and conditions of this Interim Order and the Postpetition Financing Documents, of which up to $250,000.00 will be available during the Interim Period (defined below).

M. The Postpetition Financing will be evidenced by the following (collectively, the "Postpetition Financing Documents"): (i) that certain *Security Agreement*, as admitted into

evidence at the interim hearing; (ii) that certain *Revolving Promissory Note*, as admitted into evidence at the interim hearing; and (iii) that certain *Loan Agreement*, as admitted into evidence at the interim hearing.

N. Frost is not willing to advance Postpetition Financing without first-priority liens and security interests in and to all property of the Debtor and the estate, except with respect to certain real property and improvements owned by the Debtor in Laredo, Texas, and with respect to otherwise valid and unavoidable first priority *ad valorem* property tax liens. Pursuant to the Bankruptcy Code, the Court may grant Frost such first-priority liens and security interests. Any other entity with a lien or security interest in and to any property of the Debtor as of the Petition Date will be adequately protected as a result of the grant of all liens and security interests to Frost under this Order because Frost already has interests in and to the Prepetition Collateral, and is therefore only priming itself, and other property held by the Debtor and the estate is otherwise not subject to perfected security interests or liens.

O. The Debtor is not able to obtain any postpetition financing without providing Frost or any reasonably lender the first-priority and priming liens and security interests as provided for in the Postpetition Financing Documents.

Accordingly, based on all of the foregoing and the entire record before the Court in this Bankruptcy Case, including the record of the preliminary hearing regarding the Motion, and for good and sufficient cause, it is therefore ORDERED:

1. The Motion is granted on an interim basis as provided for in this Order.

2. A final hearing on the Motion is set to be held before this Court on May _____, 2013, at _____ (the "Final Hearing").

---

INTERIM AGREED ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING; AND (II) AUTHORIZING DEBTOR'S USAGE OF CASH COLLATERAL – Page 4

3. The Debtor is authorized to use Cash Collateral for the period commencing on the Petition Date through to and including the conclusion of the Final Hearing (such period, the "Interim Period"), only for the purposes referenced in, and the amounts specified by, the budget attached to this Order as Exhibit "A" (the "Interim Budget") covering said Interim Period.

4. During the Interim Period, the Debtor may exceed the budgeted amount for any line item in the Interim Budget by no more than ten (10) percent, unless Frost agrees to a greater variance in writing, and the Debtor may exceed the entire budgeted amount for the Interim Period by no more than five (5) percent, unless Frost agrees to a greater variance in writing.

5. The Debtor is authorized to immediately enter into the Postpetition Financing and to execute and deliver to Frost all of the Postpetition Financing Documents, and the Debtor is authorized to draw on the same during the Interim Period up to a maximum amount of $250,000.00 only (the "Interim Advance"). The Debtor's use of the Interim Advance shall be limited to the Interim Budget the same as its use of Cash Collateral.

6. The Interim Advance and all funds advanced under the Postpetition Financing Documents during the Interim Period shall be secured by valid, perfected, and unavoidable first-priority liens and security interests in and to all property of the Debtor and its estate, including, without limitation, any and all business torts (collectively, the "Postpetition Collateral"); *provided, however,* that the foregoing shall not prime any lien of Southwest Securities or any ad valorem taxing authorities in and to the real property and improvements owned by the Debtor in Laredo, Texas, and shall be subordinate in priority to the same; *provided further, however,* that the foregoing shall not prime any otherwise valid and unavoidable first priority *ad valorem* property tax lien. The Debtor shall execute and deliver such documents and instruments to Frost as may be requested to evidence the validity and perfection of all of Frost's liens and security

interests in and to the Postpetition Collateral; *provided, however,* that this Order shall be self-effectuating and operative and no such execution and delivery, or filing or recordation of any instrument, shall be a condition to the perfection, validity, priority, and non-avoidance of the security interests and liens granted to Frost in and to the Postpetition Collateral.

7. Subject to the Carveout, Frost is hereby granted an automatic super-priority administrative claim pursuant to section 507(b) of the Bankruptcy Code, which is and shall be superior in priority to all other administrative claims: (i) securing the Interim Advance to the extent not satisfied by the Postpetition Collateral; and (ii) to the extent Frost is subsequently determined to have valid, perfected, and unavoidable liens and security interests in the Cash Collateral at the Final Hearing, and there is a failure of adequate protection respecting the Debtor's usage thereof (the "Superpriority Administrative Claim").

8. Subject to the Carveout, Frost is hereby granted, without the need for any further filing, instrument, recording, or otherwise, an automatically perfected, valid, and binding replacement lien, with the same priority and validity as existed on the Petition Date, in and to all property of the Debtor and its estate, including, but not limited to, claims and causes of action under Chapter 5 of the Bankruptcy Code (Sections 542, 544, 547, 548, 549, 550, and 551) to the extent of any diminution in the value of any of Frost's Prepetition Collateral or Postpetition Collateral (the "Diminution Claim").

9. The foregoing Superpriority Administrative Claim and Diminution Claim, together with the Prepetition Collateral and the Postpetition Collateral, shall be subject to a carveout for the Interim Period of $150,000.00, minus any amounts paid during the Interim Period (if any). for the benefit of the Receiver, U.S. Trustee fees, and Court-approved professionals retained by the Receiver and/or the Debtor, but only for services and expenses

provided or extended during the Interim Period, and only in such amounts as the Court may subsequently allow by separate order (the "Carveout"). Notwithstanding any provision in this Order to the contrary, the Carveout shall not exceed the maximum amount available under the Postpetition Financing Documents. Notwithstanding any provision in this Order to the contrary, no portion or proceeds of the Cash Collateral, the Post-Petition Collateral, or the Post-Petition Financing shall be used for the payment of professional fees and/or expenses incurred in connection with (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Post-Petition Financing Documents or the Loan Agreement or any security interests, liens or claims granted under this Order, the Post-Petition Financing Documents, or the Loan Agreement to secure such amounts; (b) asserting any challenges, claims, actions or causes of action against Frost or any of its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the Post-Petition Collateral or the Pre-Petition Collateral; or (d) seeking to amend or modify any of the rights granted to Frost under this Order, the Post-Petition Financing Documents or the Loan Agreement, including seeking to use Cash Collateral and/or the Post-Petition Collateral on a contested basis.

10. The Interim Period, and operation of this Order, may be extended by agreement of the Debtor and Frost as to the usage of Cash Collateral by a filed stipulation in the Bankruptcy Case, in which case all provisions, dictates, and protections of this Order will apply to any such extended term, which term shall be considered within the meaning of the Interim Period as defined and applied in this Order.

11. During the Interim Period, the Debtor, through the Trustee, shall promptly provide to Frost reasonable reporting as may be requested by Frost.

---

INTERIM AGREED ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING; AND (II) AUTHORIZING DEBTOR'S USAGE OF CASH COLLATERAL – Page 7

12. The authority to use Cash Collateral and to obtain the Postpetition Financing as provided for in this Order shall terminate immediately upon: (i) the conversion of the Bankruptcy Case to Chapter 7; (ii) the appointment of a Chapter 11 trustee for the Debtor; (iii) the dismissal of the Bankruptcy Case; (iv) any person other than the Receiver having the exclusive management of the Debtor or its estate.

13. Upon the expiration of three (3) business days after Frost gives the Debtor written notice of the existence of an Event of Default, Frost may take all or any of the following actions without further modification of the automatic stay pursuant to sections 362 of the Bankruptcy Code (which is hereby deemed modified and vacated to the limited extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of or application to this Court: (a) terminate the credit commitments or obligation to make Postpetition Financing to the Debtor under the Postpetition Financing Documents; and (b) declare the principal of and accrued interest, fees, and other liabilities constituting the Postpetition Financing to be due and payable.

14. Except as provided herein above for the Carveout, no cost or expense chargeable or alleged to be chargeable against the Postpetition Collateral under section 506(c) of the Bankruptcy Code shall be incurred in this case without the express written consent of Frost or the prior authorization of the Court after notice to Frost and a hearing. Nothing contained in this Order shall be deemed to be consent by Frost to any charge, lien, assessment or claim against the Postpetition Collateral.

15. This Order shall be immediately effective and enforceable upon its entry and no automatic stay of this Order otherwise provided for in any Bankruptcy or Local Rule shall apply to this Order.

16.     The Court shall maintain jurisdiction to interpret and enforce this Order to the maximum extent possible notwithstanding any potential dismissal of the Bankruptcy Case.

                                                                                                                 _____
                                      Honorable Brenda T. Rhoades
                                      Chief United States Bankruptcy Judge

INTERIM AGREED ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION
FINANCING; AND (II) AUTHORIZING DEBTOR'S USAGE OF CASH COLLATERAL – Page 9

MHDocs 4358151_3 13825.1